**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

        *Plaintiff*,

v.

MICHAEL JONES,

        *Defendant*.

Criminal No. 13-252

**OPINION**

CONTI, Senior District Judge.

**I.     Introduction**

Pending before the court is an "emergency motion for compassionate release/reduction in sentence" ("motion for compassionate release") filed under the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, by defendant Michael Jones ("Jones"). (ECF No. 1489.) Jones seeks release under 18 U.S.C. § 3582(c)(1)(A), which is known as the "compassionate release" provision of the statute. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (per curiam). Jones initially argued that he is entitled to compassionate release because, among other reasons, he is at "higher risk" of being infected with COVID-19 at the Federal Correctional Institution Morgantown ("FCI Morgantown") where he is incarcerated because he has high cholesterol and is obese, his mother and children need his care, and his rehabilitative efforts while incarcerated warrant his release. (ECF No. 1489 at 4-6.) The government opposed Jones' motion arguing that he has not shown extraordinary and compelling reasons warrant his release and consideration of the factors set forth in 18 U.S.C. § 3553(a) show that Jones should not be released from imprisonment because of his significant criminal history and the seriousness of the offenses

committed in this case. (ECF No. 1511.) While Jones' motion was pending before this court, he contracted COVID-19 at FCI Morgantown. On January 20 and February 25, 2021, the court held an evidentiary hearing to address, among other things, Jones' risk of reinfection and the risk that he would suffer grave illness or death if reinfected with COVID-19. (H.T. 1/20/2021 (ECF No 1530); H.T. 2/25/2021 (ECF No. 1537).)

For the reasons set forth in this opinion, the court cannot grant the relief Jones requested. The evidence presented by Jones is insufficient for the court to find a preponderance of the evidence that "extraordinary and compelling" reasons exist for his compassionate release. While his fear of becoming reinfected with COVID-19 at FCI Morgantown is understandable, whether he is highly likely to be reinfected at this time is a speculative issue. 18 U.S.C. § 3582(c)(1)(A). Even if Jones had satisfied his burden to show that extraordinary and compelling reasons justify his release, a sentencing reduction is not warranted under the factors set forth in § 3553(a). Jones' motion for compassionate release will, therefore, be denied.

## II.    Procedural History

On August 3, 2016, Jones pleaded guilty to the following counts of the second superseding indictment filed in this case:

**count one**: conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 500 grams or more of methamphetamine, and 1 kilogram or more of heroin, from January 2011 to September 2013, in violation of 21 U.S.C. § 846; and

**count five**: possession of a firearm after a prior felony conviction on February 26, 2014, in violation of 18 U.S.C. § 922(g)(1) (count five).

On November 8, 2016, this court accepted the parties' binding plea agreement entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentenced Jones to a term of imprisonment of 168 months at count one, and 120 months at count five, to be concurrently served, for a total term of imprisonment of 168 months. (ECF No. 1314 at 2.) In the binding plea

agreement, the parties agreed to, among other things, the term of imprisonment and term of supervised release. The government in the plea agreement agreed not to file an information, pursuant to 21 U.S.C. § 851, stating a prior conviction as a basis for increased punishment. The court also sentenced Jones to a term of supervised release of five years at count one of the second superseding indictment, and three years at count five of the second superseding indictment, to concurrently run, for a total term of supervised release of five years. (Id. at 3.)

On July 13, 2020, Jones filed the pending motion for compassionate release. (ECF No. 1489.) On August 7, 2020, Jones filed a supplement to his motion. (ECF No. 1501.) On August 28, 2020, counsel for Jones filed a counseled motion on his behalf, which incorporated by reference Jones' previous filings. (ECF No. 1506.) On October 21, 2020, the government filed its response in opposition to Jones' motion. (ECF No. 1511.)

On November 4, 2020, the government filed under seal Jones' medical records from the BOP. (ECF Nos. 1516, 1517.) On December 3, 2020, this court entered an order scheduling an evidentiary hearing on Jones' motion for December 16, 2020. (ECF No. 1518.) On or about December 15, 2020, the court was informed that Jones tested positive for COVID-19 while incarcerated at FCI Morgantown. Jones thereafter filed two motions to continue the evidentiary hearing. (ECF Nos. 1521, 1527.)

On January 20, 2021, the court held an evidentiary hearing with respect to Jones' motion at which Jones testified. The hearing was continued for Jones to obtain a medical expert to testify about, among other things, whether he is at risk of becoming reinfected with COVID-19 and the risk reinfection poses to his health. On February 25, 2021, the court held a continued evidentiary hearing on Jones' motion at which he testified and presented the testimony of Michael Smith, M.D.

("Dr. Smith")[1] and the parties entered exhibits into evidence. The court ordered the transcript of the hearings and took the motion under advisement.

The motion for compassionate release is now ripe for disposition.

**III.    Evidence Presented**

Jones, who is thirty-nine years old, has served 80 months or approximately 47.6% of his term of imprisonment imposed in this case. (H.T. 2/25/2021 (ECF No. 1537) at 56-57, 70.) He is currently incarcerated at FCI Morgantown in "dorm style living quarters." (H.T. 1/20/2021 (ECF No. 1530) at 11.) FCI Morgantown is a camp facility, which can house 1,500 inmates. (H.T. 2/25/2021 (ECF No. 1537) at 62-63.) As of March 18, 2021, it housed 435 inmates. FEDERAL BUREAU OF PRISONS, FCI Morgantown, https://www.bop.gov/locations/institutions/mrg/ (last visited on March 18, 2021). As of the date of the second hearing in this case, i.e., February 25, 2021, there were 2 active cases of COVID-19 among inmates and 6 among staff. FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited on February 25, 2021). As of the date of this opinion, i.e., March 18, 2021, there is 1 active case of COVID-19 among inmates and zero among staff. FEDERAL BUREAU OF PRISONS, FCI Morgantown, https://www.bop.gov/coronavirus/ (last visited on March 18, 2021).  No inmate or staff member at FCI Morgantown has died from COVID-19. (Id.)

In the building in which Jones is incarcerated, there are four "pods" or "units" and 40 inmates in each pod, which can house up to 80 inmates. (Id. at 62-63, 65-66.) (H.T. 2/25/2021 (ECF No. 1537) at 62-63.) The inmates eat together "on the unit." (Id. at 63-64.) There are "four or five different TV rooms and a card room…bathroom[,]…computer room…[and] phone areas"

---

[1]     The court recognized Dr. Smith as a medical expert in pandemic response and working with COVID-19 patients. (H.T. 2/25/2021 (ECF No. 1537) at 3-4.) The court noted that Dr. Smith was not a virologist who studies the science of viruses or an immunologist who studies the immune system. (Id. at 6.)

on the unit. (Id. at 65.) Jones has three separate jobs at FCI Morgantown, one of which was closed because the pandemic. (Id. at 12.) He is currently working in the commissary and on his unit. (H.T. 2/25/2021 (ECF No. 1537) at 60-61.) Inmates in the four pods in Jones' building interact in the various work details in the building. (H.T. 1/20/2021 (ECF No. 1530) at 66.) Jones, however, does not interact with inmates from the other pods. (Id.) Jones has participated in at least thirty-seven courses while incarcerated, along with a cognitive behavioral therapy program at FCI Morgantown, has accrued significant "good conduct time," and lowered his custody level from medium to low. (ECF No. 1489-1 at 4; ECF No. 1478-2 at 2; H.T. 1/20/2021 (ECF No. 1530) at 12.)

In November 2020,[2] Jones contracted COVID-19 while incarcerated at FCI Morgantown. (H.T. 1/20/2021 (ECF No. 1530) at 11.) He tested positive for COVID-19 on December 7, 2020. (H.T. 2/25/2021 (ECF No. 1537) at 16.) Jones described his COVID-19 symptoms as follows:

> When I first got it, it didn't feel like it was COVID. It felt like more like a sinus infection. And the soreness that I felt [in my back] attributed to actually working out. So I didn't know that I had it until I lost my sense of smell and taste. And around that time is when we got tested the second time for it.

(Id. at 11-12.)

The spread of COVID-19 in a prison setting like FCI Morgantown is "much more diffuse and concentrated...than in the American population as a whole." (H.T. 2/25/2021 (ECF No. 1537) at 8.) At FCI Morgantown, asymptomatic individuals are not tested for COVID-19. (Id. at 8.) FCI Morgantown's "open dormitory-style housing for the prisoners...increases their...intermingling

---

[2]     Jones testified that there was an "outbreak" of COVID-19 at FCI Morgantown in November 2020. "About 129" people were infected at that time. (H.T. 1/20/2021 (ECF No. 1530) at 13.) According to Jones, a second outbreak occurred at FCI Morgantown in January 2021. (Id.) Jones was not exposed to any people infected with COVID-19 "[o]utside of the staff." (Id.)

and the chances of catching COVID." (Id. at 8-9.) For example, Jones has "virtually no control over those that are around him." (Id. at 17.)

Inmates at FCI Morgantown were recently provided new face masks as personal protective equipment ("PPE"), which they can launder whenever they want. (H.T. 2/25/2021 (ECF No. 1537) at 66-67.) According to Dr. Smith, however, FCI Morgantown, like other BOP facilities, has not been effective at preventing the spread of COVID-19 at its facility. (H.T. 2/25/2021 (ECF No. 1537) at 9.) Dr. Smith has never visited FCI Morgantown and was not aware of the current COVID-19 numbers at FCI Morgantown. (Id. at 23.) Dr. Smith acknowledged that FCI Morgantown provides "good [medical] care" to its inmates because they have dentists and nurses to screen the inmates. (Id. at 9.) It is a "slow process[,]" however, for an inmate to be taken to an emergency department at a hospital. (Id.) Dr. Smith opined that under those circumstances FCI Morgantown cannot provide medical care in a "timely manner" to an inmate who becomes very ill with COVID-19. (Id. at 10.)

Dr. Smith understood that COVID-19 vaccines were being administered at FCI Morgantown. (H.T. 2/25/2021 (ECF No. 1537) at 10.) When asked whether the COVID-19 vaccines were effective against all strains of COVID-19, Dr. Smith testified:

> We just don't know that. And there's evidence that they are not with some of the strains. The estimates are that they'll be at least 20 percent less effective against some of the strains that are coming, and that's why the whole public health system in this country is hurting to try to get everyone at least vaccinated against the G strain.[3]

---

[3]   The "G strain" is the predominant strain of COVID-19 in the United States. (H.T. 2/25/2021 (ECF No. 1537) at 11.) Other strains of COVID-19 may be more contagious than the G strain. (Id.) Dr. Smith testified that BOP facilities in California have had COVID-19 cases involving strains other than the G strain of the virus. (Id. at 57-58.)

(Id. at 10-11.) As of February 25, 2021, Jones had not received a COVID-19 vaccination. (H.T. 2/25/2021 (ECF No. 1537) at 61.) He was informed that he will receive a vaccine, but was not informed when that would take place. (Id.) As of March 18, 2021, 87 staff members and 12 inmates are fully vaccinated at FCI Morgantown. FEDERAL BUREAU OF PRISONS, FCI Morgantown, https://www.bop.gov/coronavirus/ (last visited on March 18, 2021). As of February 25, 2021, there were no active COVID-19 infections in Jones' building. (H.T. 2/25/2021 (ECF No. 1537) at 67.)

A person who previously contracted COVID-19 may recontract (or become reinfected with) COVID-19 with either the same strain of the virus or a variant of the strain with which he or she was previously infected. (H.T. 2/25/2021 (ECF No. 1537) at 12.) Dr. Smith testified that the number of people who were reinfected with COVID-19 is "in the 100s of cases around the world." (Id.) In other words, most people who contract COVID-19 "don't seem to get reinfected."[4] (Id. at 26, 28-29.) Dr. Smith opined, however, that "[g]iven enough time…[reinfection is] likely." (Id. at 18.) He did not specify what "enough time" means, i.e., one month, one year, two years, etc. (Id.)

There does not appear to be a consensus about whether contracting COVID-19 provides immunity against reinfection or for how long that immunity will last. Dr. Smith testified:

> Some studies say it should be fine, you know, forever. Other studies say that having had the illness is not as immunogenic as having had the vaccine. And most studies are saying that there's some immunity that only lasts somewhere around one to three months.

(Id. at 12.) Dr. Smith testified that it is "more likely" that a reinfection would be more severe than the first infection. (Id.)

According to Dr. Smith, it is unlikely that FCI Morgantown is "capable of adequately medically treating" Jones if he suffered a reinfection of COVID-19. (Id. at 19.) Dr. Smith explained

---

[4] Dr. Smith testified that he believes cases of reinfection are being "undercounted." (H.T. 2/25/2021 (ECF No. 1537) at 30.) He testified that the current rate of reinfection is "about one percent[.]" (Id. at 33.)

that one concern after a person is infected with COVID-19 is "Post-Acute Sequelae to COVID syndrome" in which patients experience pulmonary neurologic symptoms following the infection for up to nine months, if not longer. (Id.) Dr. Smith testified that Jones' obesity,[5] early coronary artery disease with hyperlipidemia (high cholesterol),[6] prediabetes, and possible hepatitis condition place him at higher risk of death or serious illness if he recontracts COVID-19. (H.T. 2/25/2021 (ECF No. 1537) at 14-15.) Jones' age, however, lowers his risk of serious illness or death if he contacts COVID-19. (H.T. 2/25/2021 (ECF No. 1537) at 57.)

According to Dr. Smith, it is possible that Jones could experience long-term neurological and pulmonary effects of COVID-19 and not be aware of it. (H.T. 2/25/2021 (ECF No. 1537) at 16-17.) Jones, however, would have symptoms of any ongoing medical issues. (Id. at 17.) Jones currently experiences shortness of breath "every once in a while[,]" i.e., "maybe a few times a day." (Id. at 60.) Every morning he has "excess mucus in the back of…[his] throat." (Id.)

If the court granted Jones compassionate release, he planned to live with his mother,[7] stepson, and daughter in Pittsburgh, Pennsylvania. (H.T. 1/20/2021 (ECF No. 1530) at 12; H.T. 2/25/2021 (ECF No. 1537) at 64.) There is significant "community spread" of COVID-19 outside

---

[5]     Dr. Smith testified that Jones is obese but not "severely obese." (H.T. 2/25/2021 (ECF No. 1537) at 44.)

[6]     In February 2020, Jones' high cholesterol reading was 252, which placed him in the "top ten percent of his race and gender." (H.T. 2/25/2021 (ECF No. 1537) at 39-40, 54-55.) Jones was placed on the medicine "Atorvastatin" for his hyperlipidemia. (Id. at 15.) In June 2020, Jones' cholesterol reading was 153. (ECF No. 1517 at 35.) In December 2020, Jones' cholesterol reading was 191, which placed in the category of "high normal." (Id. at 51.) Dr. Smith testified that the Atorvastatin was "working." (Id. at 42.) Dr. Smith testified, however, that even if medicines control a person's hypertension, diabetes, or hyperlipidemia, "[t]he disease process…is still ongoing…[and] their susceptibility to COVID or their high-risk status for COVID still exists." (Id. at 43, 52-53.)

[7]     Jones' mother was diagnosed with cancer in 2017. She "beat the cancer" but has a "different condition from the radiation treatments that she took." (H.T. 2/25/2021 (ECF No. 1537) at 64.)

the prisons. (H.T. 2/25/2021 (ECF No. 1537) at 21-22.) Outside the prison system, however, Jones would have more control over his ability to guard against becoming reinfected with COVID-19, i.e., to use PPE and practice social distancing. (Id. at 48-49.)

## IV.   Discussion

### A.  Applicable Law

Jones seeks compassionate release from imprisonment. A district court, however, has only *limited* authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

9

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."[8] Id. (quoting 18 U.S.C. §

---

[8]    The factors set forth in 18 U.S.C. § 3553(a) are:

- – the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- – the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- – the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- – any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- – the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- – the need to provide restitution to any victims of the offense, § 3553(a)(7).

3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Jones compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors; and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Jones bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### A. Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, § 3582(c)(1)(A) provided that only the Director of the Bureau of Prisons ("BOP") could file a motion for a sentence reduction under § 3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that

"a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies.[9] Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan, 789 F. App'x at 925 (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District

---

[9]     The government concedes that Jones exhausted his administrative remedies within the BOP before filing his motion for compassionate release with this court.  (ECF No. 1511 at 2 n.1.)

Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reductions under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[10]

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo,

---

[10]      This conclusion is shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

The issue is pending before the Third Circuit Court of Appeals in United States v. Andrews, No. 20-2768, which is scheduled for submission to the panel on March 16, 2021. United States v. Avery, No. CR 04-243-01, 2021 WL 949482, at *1 (E.D. Pa. Mar. 12, 2021). The court in Avery explained:

> The two issues in Andrews are whether district courts have the authority to identify other extraordinary and compelling reasons supporting a sentence reduction; and whether the First Step Act's change to the stacking penalties in Section 924(c) constitutes an extraordinary and compelling reason.

Id. at *1 n.1.

575 F.3d 252, 256 (3d Cir. 2009) (quoting <u>Moskal v. United States</u>, 498 U.S. 103, 108 (1990)).

The court in <u>Somerville</u> explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); <u>see also</u> *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); <u>see also</u> *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

<u>Somerville</u>, 2020 WL 2781585, at *7.

Jones in his motion for compassionate release argues that he should be granted compassionate release because: (1) his high cholesterol and obesity place him at "high risk" of becoming infected with COVID-19; (2) his mother and children need his care; and (3) his rehabilitation while incarcerated warrants that relief. As discussed above, Jones—after he filed his motion—contracted COVID-19. Jones now argues that he should be granted compassionate release because his health conditions place him at serious risk of grave illness or death if he suffers a *reinfection* with COVID-19 and his mother needs his care. As discussed above, Jones has the burden of proof to show that extraordinary and compelling circumstances warrant his compassionate release. The court will consider the foregoing circumstances presented by Jones to determine whether they present extraordinary and compelling reasons for his compassionate release.

### i. Jones' risk because of COVID-19 and his health conditions

The court in <u>Somerville</u> considered decisions from federal courts across the United States in which incarcerated defendants sought compassionate release in light of the COVID-19 pandemic and established a two-part analysis for courts to use to determine whether the COVID-19 pandemic represents extraordinary and compelling reasons for a defendant's release. <u>Id.</u> at *4. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" <u>United States v. Roeder</u>, 807 Fed.Appx. 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

<u>Id.</u> (emphasis added). The court's reasoning in <u>Somerville</u> is sound, and, therefore, the court will apply the two-part test to Jones' case to determine whether he set forth extraordinary and compelling reasons for his release based upon his high cholesterol and obesity and the COVID-19 conditions at FCI Morgantown. <u>See</u> <u>United States v. Doe</u>, 833 F. App'x 366, 367 (3d Cir. 2020) (per curiam) (affirming the district court's decision denying the defendant's motion for compassionate release because despite the defendant's health conditions, his risk of contracting COVID-19 at his federal institution was speculative).

As discussed above, Dr. Smith testified that Jones' obesity, early coronary artery disease with hyperlipidemia (high cholesterol), prediabetes, and possible hepatitis condition place him at higher risk of death or serious illness if he recontracts COVID-19, and that risk cannot be ameliorated with medication for those disease processes. (H.T. 2/25/2021 (ECF No. 1537) at 14-15.) Dr. Smith also testified that when a person is reinfected with COVID-19 it is more likely than not that the reinfection would be more serious than the initial infection. Based upon the foregoing,

Jones satisfied his burden to show that he is at uniquely high risk of suffering grave illness or death if he recontracts COVID-19 while incarcerated at FCI Morgantown.

Jones must also show that there exists an actual, non-speculative risk of exposure to COVID-19 at FCI Morgantown. See Doe, 833 F. App'x at 368. The Federal Bureau of Prisons, as of the date of this opinion, reports that *1* inmate (out of 435) and *zero* staff members are infected with COVID-19 at FCI Morgantown.[11] FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited on March 18, 2020). No inmates or staff at FCI Morgantown have died from COVID-19. (Id.) Jones testified that there are no active cases of COVID-19 in his building. There are 87 staff members and 12 inmates at FCI Morgantown who are fully vaccinated, FEDERAL BUREAU OF PRISONS, FCI Morgantown, https://www.bop.gov/coronavirus/ (last visited on March 17, 2021), and the other staff members and inmates will also be vaccinated, but the timing of those vaccinations is uncertain, (H.T. 2/25/2021 (ECF No. 1537) at 61). A person may be reinfected with COVID-19. According to Dr. Smith, it is currently reported that reinfection occurs in "about one percent" of cases, but he believes reinfections are currently undercounted. There are also competing studies about how long a person who had COVID-19 will be immune. Based upon the foregoing, Jones did not prove that it is more likely than not that there is an **actual**, **non-speculative** risk that he will be exposed to or reinfected with COVID-19 at FCI Morgantown. Under those circumstances, Jones' health conditions and the COVID-19 pandemic do not constitute extraordinary **and** compelling reasons for his compassionate release. If the circumstances at FCI Morgantown change, Jones will be able to seek reconsideration or file a new request for compassionate release.

---

[11]    The BOP reports that as of March 18, 2021, FCI Morgantown houses approximately 435 inmates. FEDERAL BUREAU OF PRISONS, *FCI Morgantown*, https://www.bop.gov/locations/institutions/mrg/ (last visited on March 18, 2021).

### ii. Jones' Family Circumstances

Jones argues that his compassionate release would enable him to "assist his mother in her daily activities" and "allow him to be a part of his [six] children's lives." (ECF No. 1489 ¶¶ 9, 11, 12.) Jones explains that the mother of his ten-year-old daughter died and his mother is raising his ten-year-old daughter. (Id. ¶ 12.)  According to Jones, his release "would allow him to assist his mother in her daily activities, in order for her to properly social distance herself so that she does not succumb to the deadly COVID-19 virus." (Id. ¶ 9.)

As discussed above, "extraordinary and compelling" reasons for compassionate release were previously "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan, 789 F. App'x at 925. The commentary to § 1B1.13 provides that the following two "family circumstances" may constitute "extraordinary and compelling" circumstances warranting compassionate release: (1) "The death or incapacitation of the caregiver of the defendant's minor child or minor children[;]" and (2) "The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). While the policy statement set forth in § 1B1.13 is no longer controlling, most courts find that it provides "helpful guidance" in determining whether the family circumstances presented constitute "extraordinary and compelling" circumstances warranting compassionate release. United States v. Rodriguez, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020); United States v. Nassida, No. CR 14-241, 2020 WL 4700845, at *1 (W.D. Pa. Aug. 13, 2020); United States v. Doolittle, No. CR 19-501 (SRC), 2020 WL 4188160, at *2 (D.N.J. July 21, 2020).

Some courts have held that a defendant may only be granted compassionate release based upon his family circumstances if he or she shows that he or she is the *only* person available to act as a caregiver to his or her minor children or *incapacitated* spouse or partner. See, e.g., United

States v. Cruz-rivera, No. CR 11-43, 2020 WL 5993352, at \*5 (E.D. Pa. Oct. 9, 2020); United States v. Brown, No. 3:18-CR-29-DCB-LRA, 2020 WL 3440941, at \*3 (S.D. Miss. June 23, 2020) (collecting decisions). Other courts have recognized that a prisoner may present extraordinary and compelling circumstances warranting his or her release if he or she can show that he or she is the only available person to act as a caregiver for *other* incapacitated "close" family members, such as, a parent. United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019); see also United States v. Walker, No. 1:11 CR 270, 2019 WL 5268752 (N.D. Ohio Oct. 17, 2019). The court concludes the better view is that, because district courts have the discretion under the catchall provision of § 1B1.13 to determine which circumstances constitute extraordinary and compelling reasons warranting compassionate release, family circumstances warranting compassionate release are not limited to circumstances in which a defendant must act as a caregiver for his or her minor children or incapacitated spouse or partner; rather, the court may also consider whether a defendant is the only caregiver available for other incapacitated[12] close family members, such as, a parent.

As discussed above, Jones has the burden of proof by a preponderance of the evidence to show that his family circumstances warrant his compassionate release. Thus, Jones must show that it is more likely than not that: (1) his mother is incapacitated or his minor children are without a caregiver; and (2) he is the only person available to act as a caregiver for his mother or children. With respect to Jones' request to care for his mother, courts have explained that "incapacitated" means "'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.'" Nassida, 2020 WL 4700845, at \*3 (quoting United States v.

---

[12]     In the circumstances presented here, a defendant must show that the close family member is incapacitated to show that his family circumstances are extraordinary, i.e., that his family circumstances are *beyond what is usual*. Somerville, 2020 WL 2781585, at \*7 (citing *Extraordinary*, Merriam-Webster Dictionary (2020)). As explained above, an adult inmate having aging or sick parents (as opposed to *incapacitated* parents) is not beyond what is usual.

<u>Collins</u>, No. 15-10188, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020)).[13] The court—based upon the record before it[14]—cannot conclude that Jones mother is incapacitated because he did not show that it is more likely than not that his mother is completely disabled, cannot carry on *any* self-care, or is confined to a bed or chair. Jones asserts that his release would allow him to "assist" his mother and ensure that she follows "CDC guidelines" to prevent her from contracting COVID-19. (ECF No. 1489 ¶ 13.) Those assertions, however, do not show that his mother is incapacitated, and he is the only person available to provide her care.

With respect to Jones' children, he does not assert that any of his six children are without a caregiver and, thus, need his care. Jones provides details only with respect to his ten-year-old

---

[13]     The court in <u>Collins</u> considered the BOP's Program Statement to define "incapacitated." <u>Collins</u>, 2020 WL 136859, at *4. The court explained:

> Because the First Step Act was only enacted a little over a year ago, there is little case law addressing the standards a district court should employ when reviewing an inmate's request for compassionate release. The BOP, however, "has published a Program Statement to describe the procedures it uses to implement compassionate release/reductions in sentences under Section 3582."[ ] In this Program Statement, which was revised on January 17, 2019 (after the enactment of the First Step Act), there is guidance as to requests based on the incapacitation of a spouse and requests based on the death or incapacitation of the family member caregiver.[ ]

<u>Id.</u>

[14]     The court in <u>Collins</u> relied upon the BOP Program Statement to explain the kind of evidence a defendant could use to show his or her family circumstances constituted extraordinary and compelling reasons for his or her compassionate release. <u>Collins</u>, 2020 WL 136859, at *4. The court wrote:

> When evaluating the incapacitation of a spouse, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding the spouse's incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan.

<u>Id.</u>

daughter, i.e., her mother passed away and she is being raised by Jones' mother, but he does not provide evidence sufficient for this court to find that his mother is not taking care of the ten-year-old daughter or that there is no other person available to provide her care. Based upon the foregoing, the court cannot find that Jones' family circumstances with respect to his mother or children constitute extraordinary and compelling circumstances warranting his compassionate release.

### iii.   Jones' Rehabilitation while Incarcerated

Jones provided evidence to the court that he has participated in at least thirty-seven courses and a cognitive behavioral therapy program while incarcerated, has accrued significant "good conduct time," and lowered his custody level from medium to low. (ECF No. 1489-1 at 4; ECF No. 1478-2 at 2.) He argues that "he has rehabilitated for his crime." (ECF No. 1489 ¶ 6.) "Rehabilitation of the defendant alone[, however,] shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Under those circumstances, Jones' efforts to rehabilitate himself while incarcerated *are* commendable but cannot—standing alone—satisfy his burden to show his entitlement to compassionate release.

### iv.   Conclusion

Even considering the totality of the circumstances presented by Jones, i.e., his health conditions, the COVID-19 pandemic, his family circumstances, and his efforts to rehabilitate himself while incarcerated, he did not satisfy his burden to show that extraordinary and compelling circumstances warrant his compassionate release. His motion for compassionate release will, therefore, be denied without prejudice.

### B.   Section 3553(a) Factors

If Jones' satisfied his burden to show that extraordinary and compelling circumstances warrant his release from incarceration, the court would deny his motion for compassionate release

based upon consideration of the factors set forth in 18 U.S.C. § 3553(a).[15] Specifically, Jones committed two very serious and dangerous offenses, has a significant criminal history, and has served less than half of the term of imprisonment imposed upon him in this case. Under those circumstances, compassionate release is not warranted in this case.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)**

As this court explained at the time of sentencing, Jones, who is a convicted felon, committed very serious offenses involving a firearm and a large amount of cocaine, which has devastating effects on the community; indeed, the offense at count one carried a mandatory minimum term of imprisonment of 10 years.

With respect to Jones' history and characteristics, at the time he was originally sentenced in this case, he had a criminal history category of IV. The court recognized that Jones has a nice family, including six children. Jones' rehabilitative efforts while incarcerated are commendable; he participated in at least thirty-seven courses and a cognitive behavioral therapy program and has three jobs within FCI Morgantown. Jones contracted COVID-19 while incarcerated, and, although he reported mild symptoms, he is still experiencing symptoms from the infection. Jones' home plan includes living with his mother, who previously had cancer, his daughter and stepson.

---

[15]    The court recognizes that having concluded Jones did not satisfy his burden to show that extraordinary and compelling circumstances exist in this case, it need not consider the § 3553(a) factors. See United States v. Korbe, No. 2:09-CR-05-NR-1, 2020 WL 6384368, at *3 (W.D. Pa. Oct. 30, 2020) ("Because Ms. Korbe does not show the requisite extraordinary and compelling reasons here, and the Court therefore is not 'reduc[ing]' the term of imprisonment,' the Court need not address the section 3553(a) considerations."); United States v. Jackson, No. CR 18-413 (KSH), 2020 WL 6391182, at *3 (D.N.J. Oct. 30, 2020) ("Under the circumstances, the Court cannot find that an extraordinary and compelling reason for reduction in Jackson's term of imprisonment has been shown. Accordingly, the Court need not reach whether the sentencing factors under 18 U.S.C. § 3553(a) favor that relief or the issue of dangerousness under 18 U.S.C. § 3142(g).").

Considering the very serious and potentially dangerous nature of Jones' offenses, this factor weighs against his compassionate release.

> **2.  The need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D)**

This court sentenced Jones to a term of imprisonment of 168 months at count one, and 120 months at count five, to be concurrently served, for a total term of imprisonment of 168 months. The court explained that the overarching reason for Jones' sentence was the parties' binding agreement to the terms of imprisonment and supervised release set forth in the plea agreement, which included the government's agreement not to file a § 851 information stating a prior conviction as a basis for increased punishment.[16] Jones has served approximately 80 months or approximately 47.6% of his term of imprisonment, which is significantly less, i.e., 40 months less, than the mandatory-minimum term of imprisonment of 120 months. Under those circumstances and in light of the seriousness of Jones' offenses and his criminal history, an approximately 80-month term of imprisonment would not adequately deter criminal conduct or protect the public from further crimes by Jones.

With respect to the need to provide Jones with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, Jones is encouraged to continue programming within the BOP to enhance his vocational skills and employability

---

[16]    The statutory minimum term of imprisonment at count one of the second superseding indictment was 10 years. 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and 841(b)(1)(A)(ii) (2016). If the government filed a § 851 information setting forth one prior conviction as a basis for increased punishment, the statutory minimum term of imprisonment at count one would have been twenty years.(Id.) If the government filed a § 851 information setting forth two prior convictions as a basis for increase punishment, the statutory minimum term of imprisonment at count one would have been life. (Id.)

once he is released.

Based upon the foregoing, this factor weighs against granting Jones' compassionate release.

### 3. The sentencing range established by the Sentencing Commission, § 3553(a)(4).

The sentencing range for a term of imprisonment applicable to Jones is 135 to 168 months. The term of imprisonment of time served, i.e., 80 months, is 55 months below the low-end of the guideline range and 40 months short of the statutory-mandated minimum term of imprisonment of 120 months. The court cannot discern any reason to grant Jones a variance or departure from the sentencing guidelines and sentence him below the applicable sentencing guideline range. This factor, therefore, weighs against granting Jones' compassionate release.

### 4. Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5)

Pursuant to the policy statement set forth in U.S.S.G. § 1B1.13, the court must determine, among other things, that the defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" to reduce the defendant's term of imprisonment. Jones presented evidence to the court about his rehabilitation efforts while incarcerated and that upon release he will have the support of his mother. Jones did not, however, inform the court about his employment plans upon release from imprisonment or how he will support himself or his children. This factor, therefore, is neutral in the court's analysis about whether compassionate release is warranted in this case.

### 5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6)

This factor is moot because Jones' sentence is a guideline sentence and the court cannot discern any reason to reduce that sentence in this case.

**6.   The need to provide restitution to any victims of the offense, § 3553(a)(7).**

Although there are many victims to large-scale heroin trafficking, the law does not provide for restitution to those persons. This factor, therefore, is inapplicable in this case.

### C.   Conclusion

Because the court would have to speculate about the actual risk of reinfection, Jones did not satisfy his burden to show that extraordinary **and** compelling reasons exist for this compassionate release. Even if he satisfied that burden, however, consideration of the § 3553(a) factors show that compassionate release is not warranted in this case. Jones has a significant criminal history, committed two very serious offenses involving a firearm and a large amount of heroin, and he has served less than 50% of his original sentence. He contracted COVID-19 while incarcerated, but currently there is only 1 inmate with the infection at FCI Morgantown, and no current infections in his building. While it may be *possible* that Jones may be reinfected with COVID-19, the evidence of record shows that reinfection is rare and the court can only speculate about the likelihood of his being reinfected.

Based upon the foregoing, Jones' sentence of a term of imprisonment of 168 months at count one, and 120 months at count five, to be concurrently served, for a total term of imprisonment of 168 months, is sufficient, but not greater than necessary to fulfill the purposes of sentencing. The court will, therefore, deny Jones' motion for compassionate release without prejudice.

### V.      Conclusion

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Jones did not satisfy his burden under § 3582(c)(1)(A) to show that extraordinary **and** compelling reasons warrant his premature release from imprisonment and that consideration of the § 3553(a) factors warrant his premature release

from imprisonment. His motion for compassionate release (ECF No. 1489) will, therefore, be denied. The denial is without prejudice and Jones' request may be reconsidered if the circumstances at FCI Morgantown or his family's situation change.

An appropriate order will be entered.

BY THE COURT:

Dated: March 18, 2021

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge